UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JAMES M. BARNETT,<br><br>*Plaintiff*,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>*Defendant*. | Civil Action No. 17-5461<br><br>OPINION |

**ARLEO, UNITED STATES DISTRICT JUDGE**

**THIS MATTER** comes before the Court on Plaintiff James M. Barnett's ("Plaintiff") request for review, pursuant to 42 U.S.C. §§ 1383(c)(3) and 405(g) of the Administrative Law Judge's (the "ALJ") decision regarding Plaintiff's application for Disability Insurance Benefits ("DIB"). For the reasons set forth in this Opinion, the Commissioner of Social Security's (the "Commissioner") decision is reversed and this action is remanded to the Commissioner.

**I.    STANDARD OF REVIEW AND APPLICABLE LAW**

   **A.    Standard of Review**

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g). The Commissioner's application of legal precepts is subject to plenary review, Markle v. Barnhart, 324 F.3d 182, 187 (3d Cir. 2003), but her factual findings must be affirmed if they are supported by substantial evidence. Id. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005). Stated differently, substantial evidence consists of "more than a mere scintilla of evidence but may be less than a preponderance." McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004).

1

"[T]he substantial evidence standard is a deferential standard of review." Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004). Accordingly, the standard places a significant limit on the district court's scope of review: it prohibits the reviewing court from "weigh[ing] the evidence or substitut[ing] its conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992). Therefore, even if this Court would have decided the matter differently, it is bound by the ALJ's findings of fact so long as they are supported by substantial evidence. Hagans v. Comm'r of Soc. Sec., 694 F.3d 287, 292 (3d Cir. 2012).

In determining whether there is substantial evidence to support the Commissioner's decision, the Court must consider: "(1) the objective medical facts; (2) the diagnoses of expert opinions of treating and examining physicians on subsidiary questions of fact; (3) subjective evidence of pain testified to by the Plaintiff and corroborated by family and neighbors; and (4) the Plaintiff's educational background, work history, and present age." Holley v. Colvin, 975 F. Supp. 2d 467, 475 (D.N.J. 2013), aff'd 590 F. App'x 167 (3d Cir. 2014).

**B.     The Five-Step Disability Test**

Under the Social Security Act ("the Act"), disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1). Pursuant to her authority under the Act, the Commissioner has promulgated extensive regulations governing claims for DIB. The Commissioner applies a five-step test to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 404.1520(a)(4). If at any stage of the five-step procedure the Commissioner determines "that the claimant is or is not disabled," the analysis ends and "does not proceed to the next step." Wilford v. Colvin, No. 16-02391, 2017 WL 498719, at *4 (D.N.J. Feb.

7, 2017). The plaintiff bears the burden of proof for the first four steps, but the burden of production shifts to the Commissioner at the fifth step. Id.

At step one, the Commissioner must determine whether the claimant is currently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). "Substantial gainful activity" is work activity involving physical or mental activities that are "usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572. If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.

At step two, the Commissioner must determine whether the plaintiff's claimed impairment or combination of impairments are "severe" within the meaning of the Act. 20 C.F.R. § 404.1520(a)(4)(ii). The regulations provide that a severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). In determining whether an adult plaintiff's psychological impairments are "severe," the Commissioner must apply the "special technique" or "Psychiatric Review Technique" mandated by 20 C.F.R. § 404.1520a. Under this technique, if the plaintiff's pertinent symptoms, signs, and laboratory findings suggest that the plaintiff has a medically determinable mental impairment, the Commissioner must then evaluate the degree of functional limitation arising from the mental impairment. Id. This technique is a "complex and highly individualized process" that includes ratings in four broad areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3). Generally, a plaintiff must show that they have more than "mild" limitations in order to demonstrate the presence of a severe mental impairment. 20 C.F.R. § 404.1520a(d)(1) (2011).

At step three, the Commissioner must determine whether the plaintiff's severe impairments meet or medically equal one of the impairments in the Listings. See generally, 20 C.F.R. Pt. 404,

Subpt. P, App. 1. If the plaintiff's impairments meet the criteria of a listed impairment, "she is considered per se disabled." Rutherford, 399 F.3d at 551.

Before proceeding to step four, the Commissioner must evaluate the plaintiff's residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(a)(4)(iv). A plaintiff's RFC "is the most [the plaintiff] can still do despite [their] limitations." 20 C.F.R. § 404.1545(a)(1). In considering the plaintiff's RFC, the Commissioner must consider "all medically determinable impairments of which [she] is aware, including [plaintiff's] medically determinable impairments that are not 'severe.'" 20 C.F.R. § 404.1545(a)(2).

At step four, the Commissioner must determine whether the plaintiff can perform their past relevant work given their RFC. 20 C.F.R. § 404.1520(a)(4)(v); Jones, 364 F.3d at 503. If the plaintiff is unable to perform his past relevant work, at step five, the Commissioner must determine "whether work exists in significant numbers in the national economy that the [plaintiff] can perform given his medical impairments, age, education, past work experience," and RFC. Jones, 364 F.3d at 503; 20 C.F.R. § 404.1520(a)(4)(v).

## II. BACKGROUND

### A. Procedural History

Plaintiff filed for DIB on June 5, 2013, alleging disability since March 8, 2013. Administrative Transcript ("Tr.") 151, ECF No. 5. The Commissioner initially disapproved his claim on November 15, 2013, and disapproved it again on reconsideration. Tr. 93-97, 99-101. On March 28, 2014, Plaintiff requested that an Administrative Law Judge review his claims. Tr. 104-05. On June 23, 2015, Plaintiff appeared at a hearing before the ALJ in Newark, New Jersey. Tr. 26-75. A non-attorney representative appeared on behalf of Plaintiff. Tr. 28, 103. On October 27, 2015, the ALJ denied Plaintiff's claim. Tr. 10-25. Plaintiff requested review by the

Appeals Council on November 23, 2015, Tr. 148, but the Council denied review on May 31, 2018. Tr. 1-5. This action followed.

### B. Plaintiff's Background

As of his alleged onset date, Plaintiff was a sixty-four-year-old man. Tr. 171. He completed one year of college in 1976, and from November 1989 until his alleged onset date in 2013, operated a street sweeper for the Public Works Department of the City of Plainfield, New Jersey, with the title of assistant supervisor. Tr. 39, 176.

In a function report dated July 29, 2013, Plaintiff reported significant limitations. Tr. 187-88. He could not walk for more than 50 yards before needing to rest for fifteen minutes. Tr. 188. While he could stand, he could not do so "for a length of time." Tr. 184. While Plaintiff attributed some limitations to his chemotherapy, see e.g., Tr. 186, he did not specify the source of his limitations arising from any other condition. He also reported only being able to pay attention for 30 minutes at a time. Tr. 188

### C. Medical History[1]

Beginning in August 2005, Plaintiff sought treatment from Complete Care for lower back pain. Tr. 230. Doctors there diagnosed him with a lumbar strain and placed him on modified duty, limiting him to "sitting work only." Tr. 229. Plaintiff continued to seek treatment for this condition through December of 2006, when he complained of worsened pain. Tr. 228.

The bulk of the medical records deal with Plaintiff's colon cancer and treatment. On January 24, 2013, a colonoscopy discovered an obstructing mass in Plaintiff's sigmoid colon. Tr. 231. Biopsies revealed the mass to be a moderately differentiated adenocarcinoma. Tr. 233. On March 8, 2013, Dr. Suraj Alva performed a resection operation on Plaintiff to remove the

---

[1] This is a partial summary of the medical evidence in the record, and only discusses those portions of the record relevant to this Court's determination.

5

adenocarcinoma. Tr. 251-54. Plaintiff tolerated the surgery "very well from a surgical standpoint," but subsequently underwent chemotherapy treatments under the care of Dr. Sophie Morse. Tr. 263, 334. Dr. Morse's treatment notes show that Plaintiff complained of nausea, vomiting, fatigue, pain in his neck, inability to move his left arm, and diarrhea while undergoing chemotherapy. Tr. 333. Plaintiff also developed neuropathy, Tr. 331, 332, 318, and reported memory problems. Tr. 318. Dr. Morse's treatment notes show Plaintiff's neuropathy fluctuating from not present at a visit on October 31, 2014, to partially returning by April 2, 2015. Tr. 376. In a function report based on an exam from November 11, 2013, Dr. Morse opined that Plaintiff had no limitations in his ability to perform work related activities, but also noted that he did not have mental or physical impairments, other than those related to his chemotherapy. Tr. 340.

Beginning in July 2014, Plaintiff also sought care from various providers at a local Veterans' Affairs ("VA") hospital. On September 30, 2014, Dr. Suniti Sebastian diagnosed Plaintiff with hyperlipidemia and hypertension, noted that Plaintiff had recently reported "feelings of sadness," and referred him to VA mental health professionals. Tr. 416. Plaintiff saw VA social worker Barry Dueker on December 24, 2014, who found his mood to be "mildly depressed" but that his insight and judgment were good. Tr. 413. At a follow up appointment on January 14, 2015, Mr. Dueker found Plaintiff depressed. Tr. 411. Psychiatrist Marie Frino saw Plaintiff on February 4, 2015, diagnosed him with adjustment disorder with depressed mood, and prescribed him medication to treat it. Tr. 410. At a follow up visit on March 10, 2015, Dr. Frino continued Plaintiff's adjustment disorder medication, and noted that Dr. Nicholas Cunicella,[2] Plaintiff's family physician, prescribed Plaintiff a muscle relaxant and pain medication for shoulder and leg pain. Tr. 405.

---

[2] There are numerous treatment notes from Dr. Cunicella in the record, however, much of these notes are illegible. See e.g., Tr. 426-30.

6

### D. Hearing Before the ALJ

On June 23, 2015, Plaintiff appeared at a hearing before the ALJ. He testified that he could drive for about an hour at a time, go grocery shopping, and attend church services. Tr. 36. Although he was significantly more limited while he was undergoing chemotherapy, Plaintiff testified that as of the hearing, he could do much more. During chemotherapy, Plaintiff lost his hair, developed black patches on his hands, reported a lack of stamina, and could not dress himself. Tr. 41, 42-43. He reported being so fatigued that he was unable to do more than lie down all day. Tr. 46. As of the hearing, Plaintiff testified that he can dress and cook for himself, and that he can do housework or yard work for about 30 to 45 minutes. Tr. 45. However, he reported that even months after ceasing chemotherapy, he could only sit, stand or walk for 30 minutes at a time and could carry only 20-30 pounds. Tr. 54-55. He estimated that in a typical day, he could only sit or stand for a total of about four hours. Id.

Plaintiff also testified that his memory suffered during the chemotherapy, and it had not fully recovered following treatment. Tr. 50. During chemotherapy, Plaintiff testified that his memory lapses were sufficiently serious as to prevent him from "convers[ing] with other folks," and that despite improvement, he was still experiencing them daily. Id.

In terms of recreation, Plaintiff reported that he can play the drums for an hour, at most two hours in a day. Tr. 49. He reported taking vacations to Jamaica in June of 2014 and to Aruba in June 2015, each time for six days, and regularly attends church and a local social club in Plainfield. Tr. 52.

### E. The ALJ Decision

The ALJ determined that Plaintiff met the insured status requirements under the Act through June 30, 2014, and at step one, found that Plaintiff had not engaged in any substantial gainful activity since the alleged onset date. Tr. 15.

At step two, the ALJ determined that Plaintiff did not have any severe impairments. Id. Specifically, the ALJ found that Plaintiff "did not have an impairment or combination of impairments that significantly limited the ability to perform basic work-related activities for 12 consecutive months," and therefore did not have a severe impairment. Tr. 16. To reach this conclusion, the ALJ first looked to the definition of a "severe" impairment in 20 C.F.R. § 404.1520(a)(4)(ii), the durational requirement in 20 C.F.R. § 404.1509, and the required process to evaluate mental impairments in 20 C.F.R. § 404.1520a. Tr. 16. The ALJ noted that under Social Security Ruling 85-28, an impairment is not severe if it does not limit the claimant's ability to do certain specified work activities. Tr. 16 (citing SSR 85-28, 1985 WL 56856 (Jan. 1, 1985)). The ALJ applied the two-step process from 20 C.F.R. § 404.1529 to reach her determination, first assessing whether Plaintiff's alleged impairments were supported by medically acceptable clinical and laboratory diagnostic techniques, then evaluating whether the intensity, persistence and limiting effects of the symptoms could be shown to limit Plaintiff's functioning. Tr. 16.

Applying this procedure, the ALJ determined that Plaintiff's colon cancer, hypertension, hyperlipidemia, back and left knee pain, adjustment disorder, and depression were "medically determinable." Tr. 15-16. However, because Plaintiff's treating oncologist only determined that Plaintiff was unable to work from March to May 2013, the ALJ found that Plaintiff's colon cancer did not meet the durational requirement for impairments in 20 C.F.R. § 404.150, and thus "did not result in a significant limitation of function for a consecutive period of twelve months." Tr. 19. As for Plaintiff's other physical conditions, the ALJ concluded, without analysis, that Plaintiff's "other physical conditions are managed through medication, exercise, and medical monitoring and have not significantly impaired his function for a period of twelve months." Id.

As for Plaintiff's mental impairments, the ALJ considered the four functional areas in § 12.00C of the Listing of impairments, 20 C.F.R. Pt. 404, Subpt. P, App. 1, and concluded that Plaintiff had mild limitations in concentration, persistence, or pace, but no limitation in any other area. Tr. 19-20. She thus concluded that Plaintiff was not under any severe limitations from his alleged onset date through his date last insured, and denied the claim at step two of the five step analysis.

## III. Analysis

Plaintiff contends that the ALJ erred in denying his claim at step two. The Court agrees.

As noted above, at step two, the ALJ must determine whether a plaintiff's impairment is "severe." 20 C.F.R. § 404.1520(a)(4)(ii). "The step-two inquiry is a de minimis screening device to dispose of groundless claims." Newell v. Comm'r, 347 F.3d 541, 546 (3d Cir. 2003). To sustain his burden at this step, a plaintiff need only show "something beyond 'a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work.'" McCrea, 370 F.3d at 360–61 (quoting SSR 85–28, 1985 WL 56856, at *3). The step two analysis is very favorable to plaintiffs:

> [a] claim may be denied at step two only if the evidence shows that the individual's impairments, when considered in combination, are not medically severe, i.e., do not have more than a minimal effect on the person's physical or mental ability(ies) to perform basic work activities. If such a finding is not clearly established by medical evidence, however, adjudication must continue through the sequential evaluation process.

SSR 85-28, 1985 WL 56856 at *3. In conjunction with the plaintiff's low burden, the ALJ is required to conduct "an evaluation of the effects of the impairment(s) on the person's ability to do basic work activities," and a finding that "an impairment(s) is not severe requires a careful evaluation of the medical findings which describe the impairment(s) and an informed judgment

9

about its (their) limiting effects on the individual's physical and mental ability(ies) to perform basic work activities." Id. at *4.

Given the combination of the low burden and requirement of careful evaluation, "the Commissioner's determination to deny an applicant's request for benefits at step two should be reviewed with close scrutiny." McCrea, 370 F.3d at 360. While the same standard of review—substantial evidence—applies, "because step two is to be rarely utilized as basis for the denial of benefits, its invocation is certain to raise a judicial eyebrow." Id. at 361 (citation omitted).

Here, the ALJ did not carefully evaluate the limiting effects of any of Plaintiff's conditions other than his colon cancer. While the ALJ correctly noted that Plaintiff's treating oncologist opined that, as of November 19, 2013, Plaintiff's colon cancer did not pose any limitations as to Plaintiff's ability to engage in physical work-related activities, Tr. 340, the same oncologist incorrectly noted that Plaintiff had "no [other] physical or mental limitations" at that time. Id. Indeed, the ALJ herself found that the medical record showed that Plaintiff had a number of other medically determinable impairments, including "hypertension, hyperlipidemia, back and left knee pain, adjustment disorder, and depression." Tr. 15-16. By its terms, the oncologist's opinion is limited to the effect of Plaintiff's colon cancer on his ability to perform basic work activities, and expressly did not consider any other impairments. As the ALJ found that Plaintiff had a number of other impairments, at step two she was required to perform "a careful evaluation of the medical findings which describe the impairment(s)" and to then make "an informed judgment about its (their) limiting effects on the individual's physical and mental ability(ies) to perform basic work activities." SSR 85-28 1985 WL 56856, at *4.

Instead, the ALJ gave only a cursory review to Plaintiff's other physical impairments.[3] In a single sentence, the ALJ disposed of all of Plaintiff's remaining impairments as non-severe in a single sentence. Tr. 19. This is a far cry from a "careful evaluation" of the medical findings in the record, as required by the governing SSR and case law. For instance, there is no discussion whatsoever concerning the Plaintiff's knee and back pain, or any functional limitations concerning those conditions, or even an assessment of why those conditions had no more than a minimal effect on Plaintiff's ability to perform basic work activities. The ALJ is required to provide this analysis when denying a plaintiff's claim at step two. See Knauss v. Comm'r of Soc. Sec., No. 17-437, 2018 WL 1535213, at *5 (D.N.J. Mar. 29, 2018) (remanding where ALJ failed to address medical evidence supporting impairments, finding those impairments non-severe); Ruberti v. Comm'r of Soc. Sec., No. 16-8977, 2017 WL 6492017, at *9 (D.N.J. Dec. 19, 2017) (remanding where ALJ concluded certain impairments were non-severe without sufficient analysis). Thus, the ALJ's determination that Plaintiff was not suffering from a "severe" impairment within the meaning of the Act was not supported by substantial evidence.

## IV. CONCLUSION

Because the ALJ insufficiently analyzed whether Plaintiff was suffering from any severe impairments, the Commissioner's determination is **VACATED** and this action is **REMANDED** to the Commissioner for further proceedings consistent with this Opinion. An appropriate Order follows.

Date: December 20, 2019               */s/ Madeline Cox Arleo*
                                      **Hon. Madeline Cox Arleo**
                                      **UNITED STATES DISTRICT JUDGE**

---

[3] Plaintiff does not contest the ALJ's conclusion as to his mental impairments. On remand, the ALJ should independently reconsider whether Plaintiff's mental impairments qualify as severe within the meaning of the Act.

11